Good morning, Your Honors. May it please the Court, my name is Katie Henderson, and I represent Michael Harris, the defendant appellant in this case. I'd like to reserve two minutes for rebuttal. Your Honors, at issue here is whether Mr. Harris's false statements on a financial statement form submitted to the Financial Litigation Unit of the United States Attorney's Office caused a loss within the meaning of the guidelines, such that a 12-level enhancement and a quadrupling of his guidelines range was warranted. The answer, Your Honors, should be no. Sotomayor, I'd like you, for the purpose of my question, to assume, even though I know you don't agree with it, that the $171,000 and change does represent a loss. If that is correct, then wouldn't we have to affirm on the ground that even though it's less than $250,000, there would be no difference? The district court said that the – if there were a below $250,000 range, the sentence would be the same. So if – if I'm correct about the $171,000, would there be any difference? Wouldn't we have to affirm? Sure, Your Honor. I take your question to be about – about harmlessness in that context. Yes. At the 10-level enhancement. Exactly. And I don't think so, Your Honor. I'm aware of the comment that Your Honor is referring to, I think on page 33 of the record. I think that statement is too ambiguous from the district court. The district court didn't say that if the guidelines range was what it would be if there was a 10-level enhancement, then I would impose the same sentence here. And in fact, a few pages before, the court, when it inquires about what that guidelines range would be if a 10-level rather than a 12-level enhancement applies, the court said, I'm just curious, I'm not trying to split the baby. So – Could you – Sure, Your Honor. I want you to finish your answer, but I want you to read out loud, quote the language that you think makes it not harmless error. Sure. But continuing with your discussion with Judge Graber. Sure. So I think – I think, Your Honor, that this is not like cases where the court says regardless whether the guidelines range is X or Y, I would – I would impose the same sentence here. And I'll turn now, Judge Kleinfeld, to the statement that I'm referring to, which is on, I believe, let's see, page 25 of the record. The court asks what would – what would the guidelines range be here if the 10-level enhancement applies. And the court says something to the effect of, well, it would be – or I'm sorry, the government says something to the effect of, well, it would be at a level 13, but I don't think that's what the court should do here is apply – is And the court says, I'm not trying to split the baby. I'm just curious to know. So what I think that indicates is, is not that the court would – was asking because it would have imposed a – the same sentence, an 18-month sentence, if the guidelines range was – was one bump down, a 10-level rather than a 12-level enhancement. So, Your Honors, what Mr. – as the court clearly knows, what Mr. Harris failed to disclose on this form was a Spendthrift Trust. That Spendthrift Trust was composed of his parents' assets and was set up by his parents principally to protect their assets for their grandchildren. Are you talking about the one that's labeled Harris Trust Agreement now? That's right, Judge. And the district court here concluded that Mr. Harris's false statements caused a loss because if he would have disclosed that trust, all the funds distributed from that trust would have been paid down – paid towards his 1997 restitution order. And I don't think, Your Honors, that reflects the realistic economic approach that has been adopted by this Court for purposes of loss calculation. And that's – that's for two reasons. The first is that if the government had known about this Spendthrift Trust and had sought to garnish any funds or any payments that were distributed from it, it would – realistically, the trust would not and really could not have distributed any funds because by its own terms, it didn't allow payments to satisfy the claims of any creditor. Would you help me with something else? Absolutely. In paragraph 6A1, it says, Distribute the real estate together with personal property in the – in the house to the trustee named below. I'm sorry, Your Honor. Are you looking at the Harris Trust? That's right. Okay. Am I looking at the wrong one? No, no. I just wanted to clarify. And you're looking at – Neither of them is labeled Spendthrift Trust, even though one of them has a Spendthrift provision in it. I see. So it just gets confusing to me. The Spendthrift clause? Yes. Spendthrift is always iffy, so it just gets confusing to me. Which trust do you mean?  And the Rita and Gilbert Harris Trust had a Spendthrift Trust. Right. At issue here is the Spendthrift Trust provided in the Harris Trust because that's where these – these payments came – came out of. And which paragraph are you referring to? These are all on the same page in the – in the Harris Trust. Sure. So I'm looking at page 57 of the record, and it's labeled paragraph 5, Spendthrift. And that's the Spendthrift clause that I'm – I'm referring to. And what that clause says is that the – the interest in the – of the beneficiary in principle or income shall not be subject to the claims of any creditor. And why I think that's important is because, realistically, if the government had gotten rid of garnishment for – for this trust, the trust really couldn't have, by its terms, distributed any – any payments that would have been garnished towards a restitution debt. You know, I – I really am confused here because it seems clear under the previous decision by our court, which is law of the case, that the government can't take the principle, but it can take distributions. And it has a continuing lean on distribution. So I don't really see what's at issue there. That's right. This court in United States v. Harris found that Mr. – Mr. Harris is the defendant's interest in the Spendthrift trust was – was Federal property within the meaning of Federal debt collection proceeding statutes. But – but what I'm referring to is not whether or not the government could garnish any payments or distributions. This Court has said that it can. What I'm referring to is that the trust itself, the trustees, would not have permitted payments to come out of this trust that would have been garnished. How does – how does that argument affect, if at all, the $171,000 which was actually distributed to him? The – the – that's right. The $171,000 was distributed to him. My – what I'm submitting to this Court is that when the district court made its finding, what it determined was if Mr. Harris had disclosed this trust, that payment would have been paid down towards the 1997 restitution order. And why do you disagree with that? I disagree with that because I think if the government had known about this trust, then those payments would never have been made because they would have been – that would have been inconsistent with the terms of the trust. Not as you've suggested, Judge Kleinfeld. It's not that the government could not have breached them if they were distributed. It's that they would not have – have been distributed. Do you want to reserve? I – I do. Thank you, Judge. We'll hear from the government. Good morning, and may it please the Court. Kirsten Ault with the United States. I just want to start with the last thing that counsel said, which is that if the government had known about the trust, the payments would not have been made. And that is precisely the point, Your Honor. That is why it's lost in this case. I don't know – I don't know if it's the point for me. My concern is the $150,000 that went to the woman who was his victim and then his girlfriend or maybe girlfriend and then victim, I don't know which, and then his wife. I'm having trouble with why that should be treated as though it were a distribution to him. It looks as though the $150,000 goes toward a down payment on a house where his wife has a life estate and the trustor's grandchildren get the remainder. They're the remainder men. He gets nothing. He has no interest in the house. As for whether giving the down payment to his wife is the same as giving him $150,000, that seems like – it doesn't make any sense. Also you can't count on the relations between Harris and his victim and wife not to be adverse. It's not as though she's a straw man and Harris is really getting the money. Also, I don't really see what a life estate has to do with a situation where they just give $150,000 to somebody who's – who at least the government presumes is going to spend it on him. I'm just having a lot of trouble with the $150,000 and I didn't really see your help for my troubles in the red brief. Yes, Your Honor. She was a straw man for him. Why? What's the evidence for that? The evidence for that is that Harris's son told the probation officer that distributions were made from the trust in a way – they were structured in a way to avoid paying his creditors, including his employees who were the victims in this case. So what you're relying on is the son saying that the distribution was made to avoid the government getting the money. Yes. And in particular, he said the distributions to Harris's wife were made that way to avoid the creditors getting the money. So she was a straw man. Was the son then the trustor? I mean, did he make the – do you know what a trustor is? Yes, Your Honor. Was the son the trustee? The son was one of the beneficiaries of the trust. Well, but he wasn't a trustee, so he didn't make the distribution? Your Honor, it is not apparent in the record. There are two sons, and it's not apparent in the record which son made this. Who was the trustee at the time the distribution that went toward the down payment was made? That is not in the record, Your Honor. We know that Mr. Harris – So you should be able to just read the trust instruments and figure it out. Your Honor, there were several amendments to the trust that are not in the record. Oh, is that why I couldn't find it? Yes, Your Honor. Why aren't they in the record? The government's got the burden of proof on this. Your Honor, I don't know why they're – I don't know why they're not in the record, Your Honor. The district court apparently didn't – What it looked like to me is the son certainly has an adverse interest, because whatever money dad doesn't get, he does. He and his sister, I think it was. But if he's not the trustor and he's not the trustee, he's just a potential beneficiary with an interest adverse to his crooked father, then it strikes me as hearsay with no weight at all. Except that – Because he wouldn't know why the distribution was made. And what's more, if it was perfectly legitimate to make the distribution other than to the son, it wouldn't matter why that was done. And that's the second point, Your Honor, is it's not perfectly legitimate under the terms of the trust to make a distribution other than for Mr. Harris's benefit. By the terms of the trust itself, the trust could only distribute funds for Mr. Harris's benefit. And so if the funds – So if it wasn't for his benefit and it turned out that mom liked his wife, girlfriend, better than she liked him, and she thought he was a crook, then he can sue her or whoever the trustee was for making an improper distribution. But that doesn't mean that it was actually made for a proper purpose. But that is all speculation, Your Honor. What the facts are – Well, so is what you're saying, that it was made for an improper purpose, because since he wasn't trustee, as far as you've been able to prove, the son didn't make the distribution, and he doesn't even know the motives of whoever made the distribution. Your Honor, we do know that he was – that Mr. Harris, the defendant, was the trustee from 2009 – from at least 2009 through 2014, because that's when he wrote the checks to himself from the trust. Did he make the 250 distribution? The – for the house, that is not in the record, Your Honor. And was he trustee when the 250 distribution was made? That is not in the record, Your Honor. Well, doesn't the government have the burden of proof when it wants to get upward adjustments? Your Honor, we do have the burden of proof by a preponderance of the evidence. However, this Court reviews the district court's finding for clear error. But I keep looking at the evidence, and you keep telling me it's not in the record. Your Honor, I keep telling you the evidence you would like to see in the record is not in the record. However, there is evidence in the record. The evidence in the record – The only evidence you've got is this inadmissible hearsay statement from the son that he thinks that's why the distribution was made that way. Your Honor, it's a sentencing hearing. I don't think that the hearsay rules apply. That's true. And even if they did, it is a statement against his interest, because he – if the victims get this money, he doesn't get it. So even under the hearsay rules, I think – No, he does. He does. You know the difference between a life estate and a remainder. Yes, Your Honor. Do you? Yes, Your Honor. However – The wife got the life estate, the husband, the crook, got nothing, and the children get the remainder. So I can't see where it's – it seems like it's adverse to his interest. I can't see where it's in his interest. The more dad gets, or the more dad's girlfriend gets, or wife, the less he gets. Correct, Your Honor. Yes, Your Honor. However, he is admitting that he is part – that his family trust is committing fraud. He's admitting that they're making distributions in a way to avoid paying his credit first. When you say he, you mean the son. The son is a – is – Yes. I don't know if you'd call that an admission exactly. It's a claim, basically, that whoever is trustee is ripping him off by giving away his money to his crooked dad. Be that as it may, Your Honor, it is the evidence that we have in the record that is not speculation. We have two pieces of evidence. One, the trust is required to distribute money for the benefit of Mr. Harris. And two, Mr. Harris' son said the distributions were made to the wife in order to avoid paying the creditors. You're required to stop at a red light. I always wait, because in this town, people are always running the red light when it first changes. Just because the trust is required to do that doesn't mean it did or does. But it was not clear error for the district court to assume that everyone was being honest or the trust was distributing things in the manner that the trust was supposed to. That was not clear error for the district court to make that assumption. I just can't – if there were a distribution to Harris – I keep referring to him as the mother and the crook, because they all have the same name, and it's confusing to me otherwise. I just don't see the evidence, and I really want to know it, to show why a distribution to the crook's wife of a down payment toward a life estate amounts to a distribution to him. Because, Your Honor, it was a distribution for his benefit. Counsel, before you run out of time, I'd like to ask you about the $171,000. Opposing counsel says, yes, it was distributed to the defendant, but it wouldn't have been if they had sort of known that it was going to go to – towards restitution. And, therefore, we should not consider that a loss, and also it's not harmless. Could you respond to that, Your Honor? Yes, Your Honor. On the harmlessness point first, counsel read the court from excerpts of Record 25. Excerpts of Record 33, I think, is what Your Honor was referring to. Right. Where he says, yeah, if we assume 10, it would still be within the guidelines, and, you know, I'm going to give you 18. It's not crystal clear, but the import of it, in my view, is what, just speaking for myself, is what you say it is. But what about the inclusion of the $171,000 to begin with? What's your response on that? Your Honor, the $171,000 is checks that Mr. Harris, as a trustee of the trust, wrote to himself, and he – while he was hiding the fact that the trust existed from the U.S. Attorney's Office. As I stated, the son admitted that this was all done to hide the trust assets from the – from the creditors, from the victims. It's money that he actually had in his hands. And because there was a lien that was placed as soon as the restitution judgment was entered, any assets that he had were rightfully assets that belonged to the victims, not to him. So any money that he had that came from that trust was rightfully his victim's money that he converted to his own personal use, and that is actual loss to them because they did not get that money. He was required, because of the lien, to give that money to them as soon as he got it, and because he didn't, that was actual loss to them. Thank you, counsel. Thank you, Your Honor. I'll hear rebuttal. Thank you, Your Honors. I want to make, I think, one or two quick points. And the first is that, as I pointed out in my briefs or tried to, I think the fact that there's no loss in this false statements case is borne out in buttress by the fact that no additional restitution was ordered. I don't understand why there's no loss. A beneficiary who's 70 may still be young enough to enjoy getting their retirement distribution, and one who's 80 may not be. That's right, Your Honor. There was certainly in the 1997 case, there was a loss, a significant loss to the victims that you're referring to, and restitution was ordered to address that loss in a custodial sentence was imposed on Mr. Harris. When you say all there is is delay, is that delay in these retirees getting their money? It's a delay in the paying down of the restitution order, of the debt. Well, did anyone pay the retirees the money that he stole so it couldn't be paid out of the retirement fund? He has made payments, Your Honor. The government has garnished some of his wages, some of his Social Security. So it's not like the government has stepped in and paid the retirees, and then he just pays the government? Not that I'm aware of, no. He's made, I think, $56,000. It's only that this trust hasn't been used. So the old people, the old retirees do have to wait. The retirees, certainly the victims have not been paid the full restitution. That's what I'm asking. That is owed to them. That's right. But I think here what is different is that the restitution order stands, despite the false statements. They may die before they actually get the money. I can't speak to that, but it's certainly a possibility. That's why I didn't understand your argument that the delay didn't matter, because there would ultimately still be enough. The delay didn't cause a loss within the meaning of the guidelines, is my argument, Your Honor. And I see I'm out of time. Thank you very much for your time. The case has already been submitted for a decision. Thank both of you for your briefing and arguments today. And we'll proceed to the second case on the oral argument calendar, which is Whitcomb v. Arnold.
judges: Kleinfeld, Thomas, Graber